JANET D. LEICHLING, individually     *     IN THE
and as Personal Representative of the
Estate of John G. Leichling     *     CIRCUIT COURT
11777 Greensboro Road
Greensboro, MD 21639     *     FOR

    and     *     BALTIMORE CITY

JANET D. LEICHLING, surviving     *     CASE NO.:
spouse of John G. Leichling
11777 Greensboro Road     *
Greensboro, MD 21639

    *     JURY TRIAL REQUESTED

    and

    *

DAWN M. ROSE, surviving
daughter of John G. Leichling     *
11775 Greensboro Road
Greensboro, MD 21639     *

    and     *

GREGORY A. LEICHLING, surviving     *
son of John G. Leichling
536 Talbot Road     *
Stevensville, MD 21666

    *

    and     *

CATHERINE L. TIMMS, surviving
daughter of John G. Leichling     *
124 Benton Road
Stevensville, MD 21666     *

    and     *

HELEN CATTERTON, surviving     *
daughter of John G. Leichling
209 Beach Lane     *
Stevensville, MD 21666

    *

    and

JOHN R. LEICHLING, surviving
son of John G. Leichling                           *
25419 Kent Street
Greensboro, MD 21639                               *

      Plaintiffs                              *

                                                   *

v.                                                 *

HONEYWELL INTERNATIONAL, INC.                      *
101 Columbia Road
Morristown, N.J. 07960                             *

Serve on:
CSC Lawyers Incorporating Service Co.              *
7 St. Paul Street, Suite 1660
Baltimore, MD 21202                                *

      Defendant                               *

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

## COMPLAINT AND REQUEST FOR JURY TRIAL

Plaintiffs Janet Delores Leichling, individually and as Personal Representative of the
Estate of John G. Leichling, Janet Delores Leichling as surviving spouse of John G. Leichling,
and Dawn Marie Rose, Gregory Alan Leichling, Catherine Lyn Timms, Helen Catterton, and
John Raymond Leichling as surviving children of John G. Leichling, by their attorneys, Peter G.
Angelos, Gary Ignatowski, Timothy Manuelides, Patrick Ciociola and the Law Offices of Peter
G. Angelos, P.C. hereby sue Defendant Honeywell International, Inc. ("Honeywell") and state as
follows:

## PARTIES

1.     Plaintiff Janet Delores Leichling is the surviving spouse, and Personal
Representative of the Estate, of the decedent John George Leichling. John G. Leichling was a

career longshoreman at the Dundalk Marine Terminal ("DMT"), a marine shipping terminal located in Baltimore, Maryland. As a result of the actions of Defendant Honeywell, Mr. Leichling was exposed to toxic hexavalent chromium and died from lung cancer on September 11, 2012. Mrs. Leichling, as the Personal Representative of Mr. Leichling's Estate, is bringing a survivor action against Honeywell for pain and suffering sustained by Mr. Leichling while suffering from cancer and at the time of his death. Mrs. Leichling is also bringing wrongful death and loss of consortium claims against Honeywell for losses she suffered as a direct and proximate result of Honeywell's actions and omissions in causing her husband's death.

2.     Plaintiffs Dawn Marie Rose, Gregory Alan Leichling, Catherine Lyn Timms, Helen Catterton, and John Raymond Leichling are the adult children of the decedent John George Leichling. Mr. Leichling's children are bringing wrongful death claims against Honeywell for losses they suffered as a direct and proximate result of Honeywell's actions and omissions in causing their father's death.

3.     Defendant Honeywell is a corporation organized under the laws of the State of Delaware, with its principal place of business located at 101 Columbia Road, Morristown, New Jersey 07960. Honeywell is the corporate successor to Mutual Chemical Company of America, Allied Signal, Inc., Allied Chemical & Dye Corporation, Allied Chemical Corporation, Allied Corporation, and is responsible for all debts, liabilities and obligations of the aforementioned entities.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over Plaintiffs' claims pursuant to Md. Code Ann., Cts. & Jud. Proc. § 6-102 - 6-103. Plaintiffs' damages exceed $75,000.00, and Plaintiffs have requested trial by jury.

3

5.      Venue is proper in this Court pursuant to Md. Code Ann., Cts. & Jud. Proc. § 6-202, as the cause of action that forms the basis of Plaintiffs' complaint arose in Baltimore City.

## FACTUAL ALLEGATIONS APPLICABLE TO ALL COUNTS

6.      The decedent, John G. Leichling, was exposed to hazardous, carcinogenic, chromium ore processing residues ("COPR") as a result of Defendant Honeywell's conduct in operating a chromium production plant, and disposing of its hazardous COPR waste by-products as fill at the DMT. Decedent died from lung cancer on September 11, 2012.

7.   .   From 1845 until 1954 the Mutual Chemical Company operated in the Fells Point area of Baltimore City, at a site commonly known today as Harbor Point, one of the world's largest chromium ore processing and chromium product manufacturing plants.  · Mutual Chemical's plant produced several chromium-based products including sodium bichromate, chromic acid, sodium chromate, potassium bichromate, ammonium bichromate, and chromium sulfate.

8.      In or about 1954, Allied Chemical & Dye Corporation ("Allied Chemical") acquired Mutual Chemical Company, which became a subsidiary of Allied Chemical. Mutual Chemical Company merged into Allied Chemical in 1955. Allied Chemical was renamed to Allied Chemical Corporation in 1958, then Allied Corporation in 1981. The chromium plant continued operating until 1985. In 1985 Allied Signal Inc. merged with Allied Corporation and formed Allied Signal, Inc. Honeywell merged with Allied Signal in 1999, and the resulting entity adopted the Honeywell name.   Honeywell is the corporate successor to each

aforementioned entity and is liable for all acts, omissions, debts and liabilities of its predecessors.[1]

9.      Honeywell's chromium ore processing and chromium production were waste-intensive processes that generated massive quantities of toxic, carcinogenic, chromium (including hexavalent chromium) contaminated wastes. As recently as the 1980s, on the order of 100,000 tons of chromium-contaminated waste was generated annually at the plant.

10.      The DMT is an active marine shipping terminal located in Baltimore, Maryland. The southern portion of the terminal was constructed on lands reclaimed from prior marshlands and the Patapsco River by placement of Honeywell-generated COPR waste and non-COPR fill materials.

11.      During the 1950s, 1960s and 1970s, Honeywell used COPR wastes generated from its Harbor Point plant as fill at the DMT. Honeywell was the only generator of COPR disposed at the DMT. Environmental investigations financed by Honeywell pursuant to an environmental enforcement action brought by the Maryland Department of the Environment ("MDE") against Honeywell in 2006 revealed that Honeywell disposed of approximately 2.5 million cubic yards, equivalent to 3.25 million tons, of COPR, covering a 148 acre area, at the DMT.

12.      When deposited at the DMT, Honeywell's COPR waste contained substantial quantities of toxic, hexavalent chromium. In 2009, Honeywell reported that its COPR at the DMT contained on average 4,894 mg/kg of hexavalent chromium. By comparison, Maryland's

---

[1] For clarity and simplicity Honeywell and its predecessors will be referred to collectively as "Honeywell."

non-residential soil cleanup standard is 310 mg/kg. Honeywell's COPR fill contains over 15 times more chromium than allowed under the State's non-residential cleanup standard.

13.     Large volumes of COPR waste were stockpiled for long periods of time adjacent to work areas, until the COPR was placed in the fill areas to expand the port. COPR was also excavated and stockpiled during maintenance and/or construction operations within the COPR fill areas of the port.

14.     Chromium is a heavy metal that exists primarily in either a hexavalent or trivalent state. COPR is highly alkaline, having a pH as high as 12. The high pH of COPR causes it to remain in its toxic hexavalent form rather than degrade to its less toxic trivalent form. Hexavalent chromium is highly soluble in water and, therefore, readily leaches into surface waters, groundwater, and drinking water through cracks in the drinking water supply system running through the COPR fill area.

15.     Wind, erosion, and other airborne and waterborne releases from the chromium-contaminated COPR caused hazardous substances to spread throughout the DMT, so that workers, including John G. Leichling, were exposed to hexavalent chromium and other hazardous substances contained within the dust, dirt, and other releases from the fill areas.

16.     Furthermore, records obtained from the Maryland Port Administration ("MPA") which owns and operates the DMT show that at various times since the 1970s hexavalent chromium-contaminated groundwater leaked into the drinking water distribution system located within the fill area, causing workers like Mr. Leichling to ingest chromium-contaminated drinking water.

17.     To date, Honeywell has not undertaken any effort to remove the COPR from the DMT. Large quantities of COPR waste deposited by Honeywell's historic waste and materials

6

disposal practices remain present in dangerously toxic quantities in the air, soil and groundwater on and under the DMT.

18.    Hexavalent chromium is classified by the EPA as a Grade A carcinogen through the inhalation exposure route.  The EPA has ranked the potency of hexavalent chromium in the first quartile of human carcinogens, and has determined that hexavalent chromium is a more potent carcinogen than arsenic, benzene and polychlorinated biphenyls (PCBs).  The National Toxicology Program ("NTP") and the International Agency for Research on Cancer ("IARC") classify hexavalent chromium as a known human carcinogen.  Hexavalent chromium is known to cause lung cancer, an increase in stomach tumors and cancers in humans and animals exposed to hexavalent chromium via ingestion, and other cancers.

19.    In Interfaith Community Organization, et al. v. Honeywell International Inc., a case that involved a suit by New Jersey residents to overcome Honeywell's twenty-year-long recalcitrance in cleaning up chromium-contaminated wastes produced by a chromium manufacturing plant similar to the one at Harbor Point, Honeywell admitted that its COPR wastes are both a "solid waste" and "hazardous waste" under the federal Resource Conservation and Recovery Act ("RCRA").[2]

20.    Under Maryland law, chromium is a hazardous substance as defined by Section 7-201(m) of the Environment Article of the Maryland Code.

21.    Humans may be exposed to hexavalent chromium through dermal contact, inhalation and ingestion.  Such contact and exposure produces numerous and serious health problems.  Chromium exposure has been shown to cause mutation in mammalian cells, including

---

[2] RCRA defines "hazardous waste" as a "solid waste, or combination of solid wastes, which . . . may . . . pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, or disposed of, or otherwise managed."  42 U.S.C. § 6903(5)(B).

chromosomal aberrations.  Hexavalent chromium can enter the body and cause DNA protein cross links, which in turn can result in cell abnormality and genetic mutation.

22.     Honeywell's records demonstrate that the company knew of the dangers associated with hexavalent chromium and COPR prior to, and at the time of, disposal at the DMT.

23.     In an internal memorandum dated May 14, 1937, Honeywell wrote that COPR's use outdoors "would be rather dangerous" because of "harmful compounds;" that it "might cause a great deal of trouble;" and it might be "actually harmful."

24.     By 1938 Honeywell began to maintain a bibliography on the subject of chrome dust and lung cancer.  The bibliography tracked the high incidence of pulmonary cancer and cancer of the digestive tract caused by exposure to chromium dust.

25.     In 1951, the President of Honeywell sent the Executive Vice President of another major chromium producer a confidential letter in an effort to develop a strategy to suppress and discredit reports linking chromium dusts to serious health risks out of fear such a report would cause "considerable damage" to the industry.

26.     A 1954 study commissioned by PPG Industries, Inc., a major chromium product manufacturer, warned that the processing of chromium in its Jersey City facility caused lung cancer and other health effects.  PPG was cautioned to "insure against unnecessary exposures" to chromium.  PPG further warned that "routine use of respirators is essential" to prevent exposure.

27.     In 1954 Honeywell and PPG jointly commissioned a study through the Industrial Hygiene Foundation to address their "common serious health problem," i.e. "nasal perforations, skin ulcers, and lung cancer."

8

28.     A 1957 report prepared with input from Honeywell and PPG discussed, in detail, the then-known association of chromium with lung cancer, including cancer among their employees.  The report discussed research that Honeywell and PPG had been conducting since the 1930s.

29.     By 1958 Honeywell and PPG recognized that "we are in a vulnerable position with regard to waste disposal," i.e. COPR.

30.     Honeywell knew, or wilfully refused to know, that workers at the DMT would be exposed to its chromium-contaminated COPR wastes.

31.     Despite its knowledge, Honeywell engaged in a decades-long practice of disposing of COPR waste at the DMT.

32.     Despite its knowledge, Honeywell engaged in a decades-long practice, which continues today, to mislead workers at the DMT about the risks associated with COPR and hexavalent chromium.  Honeywell intentionally and/or negligently concealed and failed to disclose to workers material facts regarding the nature, extent and health effects of exposure to COPR at the DMT.

33.     As recently as February, 2012, in an article published in the local press (the "Baltimore Sun" newspaper), Honeywell's remediation director at the DMT, while referring to the COPR waste disposed by Honeywell at the DMT and elsewhere, was quoted saying that COPR "was actually considered to be good fill."

34.     Contrary to Honeywell's remediation director's statements, Honeywell knew of the dangers associated with hexavalent chromium and COPR for decades prior to (as early as 1937), and at the time of, disposal at the DMT.

35. Plaintiffs are the spouse and surviving adult children of John G. Leichling, a career longshoreman at the DMT, who died from lung cancer on September 11, 2012. John Leichling was exposed to chromium-contaminated COPR at the DMT as a result of Honeywell's conduct in generating, transporting, storing, handling, dumping, placing, and disposing of COPR waste at the DMT in a manner that continuously exposed Mr. Leichling to COPR.

36. Honeywell, negligently and intentionally, concealed and failed to disclose to John G. Leichling and others similarly situated facts concerning the nature, magnitude, extent and health effects of their exposure to Honeywell's COPR waste.

37. Defendant knew, or by exercising reasonable care should have known, that John Leichling and other similarly situated would be exposed to chromium-contaminated COPR wastes. Defendant knew, or by exercising reasonable care should have known, that by concealing material facts about the nature of Defendant's waste disposal practices, and the health effects of exposure to COPR wastes at the DMT, John Leichling and other similarly situated would continuously be exposed to hazardous contaminants, including hexavalent chromium, while working at the DMT.

38. At all relevant times, John G. Leichling and others similarly situated reasonably believed that the air, soil, groundwater, and drinking water at the DMT did not pose a potential health hazard.

39. John G. Leichling and others similarly situated were exposed to hexavalent chromium and other hazardous materials due to Defendant's conduct in transporting, storing, handling, dumping, placing and excavating COPR at the DMT.

40.     At all relevant times, Defendant caused injury and damages to John G. Leichling and others similarly situated through acts and omissions actuated by actual and/or implied malice against those persons who foreseeably might be harmed by such acts and omissions.

## COUNT ONE

## STRICT LIABILITY (SURVIVOR CLAIM)

41.     Plaintiff Janet D. Leichling, as personal representative of the Estate of John G. Leichling, adopts and incorporates by reference the facts and allegations contained in paragraphs 1-40 as if fully restated herein.

42.     During the 1950s, 1960s and 1970s Honeywell used the COPR wastes generated from its manufacturing processes at Harbor Point as fill at the DMT, with full knowledge that its actions would cause John G. Leichling and others similarly situated to become exposed to COPR and hazardous substances contained within the COPR.

43.     Defendant, by manufacturing, generating, transporting, storing, handling, dumping, placing, excavating, releasing and dispersing toxic CORP contamination throughout the DMT engaged in abnormally dangerous, ultra-hazardous, and inherently dangerous activities for which it is strictly liable to Plaintiffs.

44.     Defendant's activities posed a high degree of risk of harm to John G. Leichling and others similarly situated.  Defendant's COPR contained highly toxic hexavalent chromium, which presents numerous serious health risks, including cancer.

45.     The risks posed by Defendant's activities in disposing of massive quantities of COPR waste in an active marine terminal, occupied daily by hundreds of longshoremen like John G. Leichling, could not be eliminated by the exercise of reasonable care and no safe way exists to dispose of toxic waste by dumping it onto open land or into water at the terminal given

11

the ability of COPR waste, and hexavalent chromium in particular, to cause cancer and other serious health effects in humans.

46.     John G. Leichling and others similarly situated, unaware of the unreasonably dangerous condition posed by Defendant's COPR wastes, were exposed to COPR, including hexavalent chromium.

47.     At all times relevant herein, Honeywell had control over the abnormally dangerous activity of disposing of toxic COPR waste at the DMT.

48.     At all relevant times herein, Honeywell was aware of the human health risks posed by exposure to its COPR wastes, and consciously or deliberately disregarded the foreseeable harm that could result from John G. Leichling's and other workers' exposure to its COPR wastes.

49.     At all relevant times herein, Defendant caused injury to John G. Leichling and others similarly situated through acts and omissions actuated by actual and/or implied malice toward persons who foreseeably might be harmed by such acts and omissions.  Defendant, despite its actual knowledge of the serious health effects associated with chromium exposure, transported, stored, handled, dumped, placed, disposed, and excavated COPR waste at the DMT, while failing to warn workers of the dangers that those activities posed; failing to inform workers about the reasonably necessary precautions that should be taken to prevent their exposure to COPR; and failing to inform workers of the harm and injuries that could result from their reasonably foreseeable exposure to COPR.

50.     As a direct result of Defendant's abnormally dangerous activities of disposing of COPR waste at the DMT, and Defendant's actual and/or implied malice toward John G. Leichling, Mr. Leichling suffered lung cancer, which led to his death.

WHEREFORE, Janet Delores Leichling as Personal Representative of the Estate of John G. Leichling claims more than $75,000.00 each in compensatory damages against Defendant for, among other things, conscious pain and suffering of the decedent, medical expenses, funeral expenses, punitive damages, plus interest and costs, and such other and further relief as the Court deems appropriate.

## COUNT TWO

### NEGLIGENT MISREPRESENTATION (SURVIVOR CLAIM)

51.     Plaintiff Janet D. Leichling, as personal representative of the Estate of John G. Leichling, adopts and incorporates by reference the facts and allegations contained in paragraphs 1-50 as if fully restated herein.

52.     Honeywell knew, or by exercising reasonable care should have known, that COPR posed a serious risk of injury or death to persons exposed to Honeywell's COPR at the DMT.

53.     Honeywell owed John G. Leichling and others similarly situated a duty of ordinary and reasonable care to prevent their reasonably foreseeable exposure to COPR, including hexavalent chromium, at the DMT; to warn them about the dangers associated with exposure to COPR; inform them about the reasonably necessary precautions that should be taken to prevent their exposure to COPR; and inform them of the harm and injuries that could result from their reasonably foreseeable exposure to COPR.

54.     Honeywell knew, or by exercising reasonable care should have known, that wind, erosion, and other airborne and waterborne releases of the chromium-contaminated COPR would cause these hazardous substances to spread throughout the DMT, so that John G. Leichling and

13

persons similarly situated would be exposed to the hazardous materials, including hexavalent chromium.

55.     Honeywell negligently and falsely asserted and/or represented that the DMT was a safe place to work by transporting storing, handling, dumping, placing, disposing, and excavating COPR waste at the DMT while, *inter alia*, failing to: warn workers at the DMT of the dangers that those activities posed; inform workers about the reasonably necessary precautions that should be taken to prevent their exposure to COPR; and inform workers of the harm and injuries that could result from their reasonably foreseeable exposure to COPR.

56.     Honeywell intended that John G. Leichling and other similarly situated rely upon Honeywell's actions and representations that the DMT was a safe place to work and to continue to work at the DMT.

57.     Honeywell knew and expected that John G. Leichling and others similarly situated would reasonably rely upon Honeywell's representations and continue to work at the DMT without taking reasonable and necessary precautions to prevent their exposure to hazardous substances.

58.     In reliance upon Honeywell's actions and representations, John G. Leichling and others similarly situated believed that the air, soil, groundwater, and drinking water at the DMT was safe, and did not pose a potential health hazard.

59.     At all times relevant herein, Honeywell was aware of the human health risks posed by exposure to its COPR wastes, and consciously or deliberately disregarded the foreseeable harm that could result from John G. Leichling's and other workers' exposure to its COPR wastes.

14

60.     At all relevant times the Honeywell caused injury to John G. Leichling and others similarly situated through acts and omissions actuated by actual and/or implied malice toward persons who foreseeably might be harmed by such acts and omissions.  Defendant, despite its longstanding knowledge that exposure to COPR, and hexavalent chromium in particular, could cause serious injury or death, misrepresented to John G. Leichling and others similarly situated that its activities at the DMT were safe.

61.     As a direct and proximate result of Defendant's negligent misrepresentations, John G. Leichling contracted fatal lung cancer and died on September 11, 2012.

62.     All Plaintiff's injuries and losses were caused solely by the negligence of Defendant, without any negligence on the part of the Plaintiff.

WHEREFORE, Janet Delores Leichling as Personal Representative of the Estate of John G. Leichling claims more than $75,000.00 each in compensatory damages against Defendant for, among other things, conscious pain and suffering of the decedent, medical expenses, funeral expenses, punitive damages, plus interest and costs, and such other and further relief as the Court deems appropriate.

## COUNT THREE

## FRAUD – INTENTIONAL MISREPRESENTATION
## (SURVIVAL CLAIM)

63.     Plaintiff Janet D. Leichling, as Personal Representative of the Estate of John G. Leichling, adopts and incorporates by reference the facts and allegations contained in paragraphs 1-62 as if fully restated herein.

64.     Honeywell owed John D. Leichling and others similarly situated a duty of ordinary and reasonable care to prevent their reasonably foreseeable exposure to COPR,

including hexavalent chromium at the DMT; to warn them about the dangers associated to COPR; inform them about the reasonably necessary precautions that should be taken to prevent their exposure to COPR; and inform them about the harm and injuries that could result from their reasonably foreseeable exposure to COPR.

65.    For decades prior to John G. Leichling's and others' exposure to Honeywell's COPR waste, Honeywell had acquired substantial medical and scientific knowledge by which Honeywell clearly knew that its COPR wastes were hazardous to the life, health and safety of John G. Leichling and other persons similarly situated who were exposed to its COPR wastes.

66.    Nevertheless, Honeywell refused to act upon such medical and scientific data to warn John G. Leichling and other workers at the DMT about the dangers associated with exposure to COPR; inform them about the reasonably necessary precautions that should be taken to prevent their exposure to COPR; inform them of the harm and injuries that could result from their reasonably foreseeable exposure to COPR; and take other reasonable precautions necessary to lessen the dangerous and lethal characteristics of its COPR wastes.

67.    Honeywell's failure to disclose to John G. Leichling and other workers the existence of COPR waste at the DMT; provide workers warnings about the dangers associated with exposure to COPR; provide workers information about the reasonable and necessary precautions that should be taken to prevent their exposure to COPR; and inform them of the harm and injuries that could result from their reasonably foreseeable exposure to COPR constituted a failure to disclose material facts, which Honeywell had a duty to disclose.

68.    Honeywell's failure to disclose to John G. Leichling and others similarly situated the risks associated with COPR disposal at the DMT deprived them of the informed opportunity to remove or protect themselves from exposure to Honeywell's COPR wastes.

69.     As a direct and proximate result of Honeywell's concealment of material facts, John G. Leichling and others similarly situated reasonably believed that the air, soil, groundwater, and drinking water at the DMT was safe, and did not pose a potential health hazard.

70.     At all relevant times, Honeywell, aware of the human health risks posed by exposure to its COPR wastes, consciously or deliberately disregarded the foreseeable harm that could result from John G. Leichling's and other workers' exposure to its COPR wastes.

71.     At all relevant times herein, Honeywell caused injury to John G. Leichling and others similarly situated through acts and omissions actuated by actual and/or implied malice toward persons who foreseeably might be harmed by such acts and omissions.

72.     As a direct and proximate result of Defendant's conscious and deliberate fraudulent concealment of material facts, John G. Leichling contracted fatal lung cancer and died on September 11, 2012.

WHEREFORE, Janet Delores Leichling as Personal Representative of the Estate of John G. Leichling claims more than $75,000.00 each in compensatory damages against Defendant for, among other things, conscious pain and suffering of the decedent, medical expenses, funeral expenses, punitive damages, plus interest and costs, and such other and further relief as the Court deems appropriate.

## COUNT FOUR

## NEGLIGENCE (SURVIVOR CLAIM)

73.     Plaintiffs adopt and incorporate by reference the facts and allegations contained in paragraphs 1-72 as if fully restated herein.

74.     Plaintiff Janet Delores Leichling is the Personal Representative of John G. Leichling, deceased.

75.     Mr. Leichling's cancer and death were a direct result of the negligence of Defendant. Honeywell negligently, with actual and/or implied malice, toward John G. Leichling breached their duty of reasonable care by:

> a. Negligently and intentionally disposing of COPR containing hazardous substances, including carcinogenic hexavalent chromium, at the DMT;
>
> b. Negligently and intentionally causing John G. Leichling to be exposed to COPR;
>
> c. Negligently and intentionally failing to inform John G. Leichling about his exposure to COPR;
>
> d. Negligently and intentionally failing to inform John G. Leichling about the reasonably necessary precautions that should be taken to prevent their exposure to COPR;
>
> e. Negligently and intentionally failing to warn John G. Leichling about the dangers associated with his exposure to COPR;
>
> f. Concealing and failing to disclose to John Leichling and others similarly situated material facts concerning the nature, magnitude, extent, and health effects of their exposure to Honeywell's COPR waste; and
>
> g. Being otherwise negligent.

76.     At all relevant times, Honeywell was aware of the human health risks posed by exposure to its COPR wastes, and consciously, deliberately, and gross indifference, disregarded

the foreseeable harm that could result from John G. Leichling's and other workers' exposure to its COPR wastes.

77.     At all relevant times, Honeywell caused injury to John G. Leichling and others similarly situated through acts and omissions actuated by actual and/or implied malice toward persons who foreseeably might be harmed by such acts and omissions.

78.     As a direct and proximate result of the negligence of Defendant, John G. Leichling contracted fatal lung cancer and died on September 11, 2012.

79.     As a direct and proximate result of Defendant's negligence, John G. Leichling suffered severe pain and suffering between when he was diagnosed with lung cancer and the time of his death.

80.     All Plaintiff's injuries and losses were caused solely by the negligence of Defendant, without any negligence on the part of the Plaintiff.

WHEREFORE, Janet Delores Leichling as Personal Representative of the Estate of John G. Leichling claims more than $75,000.00 each in compensatory damages against Defendant for, among other things, conscious pain and suffering of the decedent, medical expenses, funeral expenses, punitive damages, plus interest and costs, and such other and further relief as the Court deems appropriate.

## COUNT FIVE

## LOSS OF CONSORTIUM

81.     Plaintiff Janet D. Leichling adopts and incorporates by reference the facts and allegations contained in paragraphs 1-80 as if fully restated herein.

82.     Plaintiff was married to John G. Leichling at all relevant points in time.

83.    Plaintiff suffered and continues to suffer a loss of consortium, which loss is and detriment is a proximate consequence of Defendant's aforementioned acts, omissions, failures, and breaches of duty.

84.    WHEREFORE, Plaintiff Janet D. Leichling claims more than $75,000.00 in compensatory damages, punitive damages, plus interest and costs, and such other and further relief as the Court deems appropriate.

## COUNT SIX

### WRONGFUL DEATH – ALL COUNTS

85.    Plaintiffs adopt and incorporate by reference the facts, allegations and all counts (strict liability, negligence, negligent representation, fraud, loss of consortium) contained in paragraphs 1-84 as if fully restated herein.

86.    Plaintiff Janet D. Leichling and John G. Leichling were married at the time of John Leichling's death and had been for many years; and, as a direct and proximate result of Defendant's acts, omissions, failures, and breaches of duty as alleged above, John G. Leichling developed COPR-related lung cancer, which caused his death.

87.    As a direct and proximate result of the wrongful death of John G. Leichling, Plaintiff Janet D. Leichling has lost and been deprived of the services, care, attention, society, companionship, comfort, protection, marital care, advice, counsel and guidance which John G. Leichling rendered to her while alive and which he would have continued to afford and render to her had he continued to live.  As a further and direct proximate result of the tortious conduct complained of, Plaintiff has suffered and will suffer extreme mental anguish and emotional pain and suffering and, further, has been, is and will be unable to live her normal life.

88.     As a direct and proximate result of Defendant's acts, omissions, failures, and breaches of duty complained of, a cause of action has accrued for the use and on behalf of Plaintiff for compensation to her for all pecuniary losses and damages, past, present and future which she has sustained, is sustaining and will sustain.

89.     As a result of their marriage, Janet D. Leichling and John G. Leichling had five children, who join in this action as Plaintiffs.

90.     As a direct and proximate result of the wrongful death of their father, the children have lost and have been deprived of the services, care, attention, society, companionship, comfort, protection, guidance, and education which their father rendered to them while alive and which he would have continued to afford and render to them had he continued to live.  As a further and direct proximate result of the tortious conduct complained of, Plaintiffs have suffered and will suffer extreme mental anguish and emotional pain and suffering and further, have been, and will be unable to live their normal lives.

91.     As a direct and proximate result of Defendant's acts, omissions, failures, and breaches of duty complained of, a cause of action has accrued for the use and on behalf of Plaintiffs for compensation to them for all pecuniary losses and damages, past, present and future which she has sustained, is sustaining and will sustain.

92.     John G. Leichling died on September 11, 2012.  This Complaint was filed on May 16, 2014.

WHEREFORE, Plaintiffs Janet Delores Leichling, Dawn Marie Rose, Gregory Alan Leichling, Catherine Lyn Timms, Helen Catterton, and John Raymond Leichling, demand judgment against Defendant for more than $75,000.00 each in compensatory damages, punitive

damages, plus interest and costs, and such other and further relief as the Court deems appropriate.

## REQUEST FOR JURY TRIAL

Plaintiffs request trial by jury on all counts.

Respectfully submitted,

Peter G. Angelos, Esq.
Gary Ignatowski, Esq.
Timothy Manuelides, Esq.
Patrick Ciociola, Esq.
LAW OFFICES OF PETER G. ANGELOS, P.C.
One Charles Center
100 North Charles Street
Baltimore, MD 21201

*Attorneys for Plaintiffs*