IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JANET D. LEICHLING, *et al.*,                         *

    Plaintiffs,                                          *

            v.                              *          Civil Action No. RDB-14-2589

HONEYWELL INTERNATIONAL, INC.,                       *

    Defendant.                                           *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM OPINION

Plaintiffs Janet D. Leichling, Dawn M. Rose, Gregory A. Leichling, Catherine L. Timms, Helen Catterton, and John R. Leichling (collectively, "Plaintiffs") bring this diversity action against Defendant Honeywell International, Inc. ("Honeywell" or "Defendant"), alleging various common law tort claims stemming from the death of John G. Leichling (the "Decedent"). Specifically, the Plaintiffs claim that the Decedent's 2012 death from lung cancer was the direct result of his prolonged exposure to hazardous chromium ore processing residues at the Dundalk Marine Terminal. Currently pending is Defendant's Motion to Dismiss (ECF No. 11).[1] The parties' submissions have been reviewed and no

---

[1] After Defendant filed the pending Motion to Dismiss, Plaintiffs filed a Second Amended Complaint (ECF No. 19), in addition to their Response in Opposition to Defendant's Motion to Dismiss (ECF No. 18). Rather than file a new motion to dismiss the Second Amended Complaint, Defendant addressed any newly-added allegations in its Reply (ECF No. 20). Typically, an amended pleading supersedes the earlier pleading and "renders it of no further legal effect." *Buechler v. Your Wine & Spirit Shoppe, Inc.*, 846 F. Supp. 2d 406, 414 (D. Md. 2012) (citing *Young v. City of Mt. Rainier*, 238 F.3d 567, 572 (4th Cir. 2001)). Yet, as this Court has explained,

> [d]efendants should not be required to file a new motion to dismiss simply
> because an amended pleading was introduced while their motion was
> pending. If some of the defects raised in the original motion remain in the

hearing is necessary. *See* Local Rule 105.6 (D. Md. 2014). This action is clearly barred by Maryland's statute of repose as set forth in Md. Code Ann., Cts. & Jud. Proc. § 5-108(a) and does not fall within a statutory exception passed by the Maryland General Assembly as specifically applied to asbestos. Accordingly, for the reasons that follow, Defendant Honeywell's Motion to Dismiss (ECF No. 11) is GRANTED WITH PREJUDICE. Plaintiffs' claims are time-barred under Maryland's statute of repose, thus this case is DISMISSED WITH PREJUDICE.

## BACKGROUND

This Court accepts as true the facts alleged in the plaintiffs' complaint. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011). This action arises out of the alleged exposure of the Decedent, John Leichling, to hazardous chromium ore processing residues ("COPR") during his employment at the Dundalk Marine Terminal (the "DMT"). Second Amend. Compl. ¶¶ 1, 6. The Decedent worked at the DMT, a large and active marine shipping terminal, from 1973 through 2001. *Id.* ¶ 6. He died on September 11, 2012 from lung cancer. *Id.*

From 1854-1985, Defendant Honeywell [2] operated a significant chromium

---

new pleading, the court simply may consider the motion as being addressed to the amended pleading. *To hold otherwise would be to exalt form over substance.*

*Buechler*, 846 F. Supp. 2d at 415 (emphasis in original) (quoting 6 Charles Alan Wright *et al.*, *Federal Practice and Procedures* § 1476, at 638 (2010 ed.)) In this case, Honeywell argues that the Second Amended Complaint reflects the same deficiencies as the First Amended Complaint (ECF No. 4). Accordingly, this Court will consider the pending Motion as addressing the Second Amended Complaint.

[2] From 1854-1954, Mutual Chemical Company ("Mutual Chemical") operated the chromium plant. *Id.* ¶ 7. In 1954, Allied Chemical & Dye Corporation ("Allied Chemical") acquired Mutual Chemical as a subsidiary, wholly incorporating the latter company a year later. *Id.* ¶ 8. Allied Chemical, which became Allied Corporation in 1981, merged with Signal Companies in 1985 to form Allied Signal, Inc. *Id.* Fourteen years later, Honeywell merged with Allied Signal, Inc. to create the current Honeywell International, Inc. *Id.* Plaintiffs thus allege, and this Court will assume, that Defendant Honeywell is the corporate successor of all debts, liabilities, and obligations of its predecessor entities. *Id.*

manufacturing plant in the Fells Point area of Baltimore, Maryland. *Id.* ¶¶ 7-8. This chromium manufacturing process produced COPR, a by-product waste material with a "soil-like" consistency. *Id.* ¶¶ 6-7. COPR contains hexavalent chromium, which the Environmental Protection Agency classifies as a potent carcinogen. *Id.* ¶ 24. Among other side effects, hexavalent chromium may cause lung cancer, cancerous stomach tumors, and other cancers. *Id.* Hexavalent chromium exposure may occur through ingestion of Hexavalent chromium-tainted water, or via inhalation of Hexavalent chromium-laced dust and dirt. *Id.* ¶¶ 19-21.

Beginning in the 1950s, Honeywell used COPR from the Fells Point chromium plant as fill to reclaim land from the Patapsco River to be used by the DMT. *Id.* ¶¶ 14-16; *see also* Def.'s Mot. to Dismiss Attach. A, 2, ECF No. 11-2 ("Consent Decree").[3] The Maryland Port Authority ("MPA") bought the reclaimed land in 1967 and built the DMT expansion on that land. Second Amend. Compl. ¶ 11; *see also* Consent Decree, at 2. The use of COPR to expand the DMT continued until 1976, when Honeywell ceased dumping COPR on the land in question.[4] Second Amend. Compl. ¶¶ 16-17. Plaintiffs allege that, throughout this period, Honeywell was aware of the hazardous and toxic nature of COPR, but nonetheless continued to use the material as fill. *Id.* ¶¶ 28-36.

---

[3] The Consent Decree reflects the agreement reached between the Maryland Department of the Environment, the Maryland Port Authority (the "MPA"), and Honeywell regarding remediation of COPR at the DMT. *See* Def.'s Mot. to Dismiss Attach. A. This document is a public record, and a court "may also take judicial notice of matters of public record without converting a 12(b)(6) motion into a motion for summary judgment." *Clark v. BASF Salaried Emps.' Pension Plan*, 329 F. Supp. 2d 694, 697 (W.D.N.C. 2004) (quoting *Henson v. CSC Credit Servs.* 29 F.3d 280, 284 (7th Cir. 1994) (internal citations omitted)); *accord*, *Norfolk Fed'n of Business Dist. v. H.U.D.*, 932 F. Supp. 730, 736 (E.D. Va.), *aff'd* 103 F.3d 119 (4th Cir. 1996). This Court thus will consider the extrinsic document in question.

[4] COPR use ceased pursuant to an agreement between the MPA and Honeywell, in response to the MPA's notification that it would no longer accept COPR at the DMT. *Id* ¶ 17.

Plaintiff Janet Leichling is the surviving spouse of the Decedent, John Leichling, as well as the personal representative of his estate. *Id.* ¶ 1. Plaintiffs Dawn Rose, Gregory Leichling, Catherine Timms, Helen Catterton, and John Leichling are the adult children of the Decedent. *Id.* ¶ 2. Plaintiffs allege that the Decedent worked on portions of the DMT that sat directly above the COPR-filled reclaimed land. *Id.* ¶ 37. During his nearly thirty-year career at the DMT, the Decedent was allegedly repeatedly exposed to hexavalent chromium in the COPR via inhalation, ingestion, and dermal contact. *Id.* ¶¶ 37, 40. Plaintiffs claim that this prolonged exposure directly caused the Decedent's lung cancer, from which he died in 2012. *Id.* ¶¶ 46. 50.

Plaintiffs filed the subject action in the Circuit Court for Baltimore City, Maryland on May 16, 2014, asserting claims of strict liability, intentional and negligent misrepresentation, negligence, premises liability, loss of consortium, and wrongful death. *See* Compl., ECF No. 2; *see also* Amend. Compl., ECF No. 4. Honeywell timely removed the case to this Court pursuant to 28 U.S.C. § 1332. *See* Notice of Removal, ECF No. 1. Honeywell subsequently moved to dismiss. *See* Mot. to Dismiss, ECF No. 11. While that motion was pending, Plaintiffs filed a Second Amended Complaint (ECF No. 19).[5]

## STANDARD OF REVIEW

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P 8(a)(2).  Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted.  The

---

[5] As explained *supra*, this Court will consider Defendant's Motion to Dismiss as addressed to the Second Amended Complaint.

purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). The Supreme Court's recent opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

As with a statute of limitations, a defendant may raise the statute of repose as a bar to the plaintiff's claims as an affirmative defense. *See Carlucci v. Han*, 886 F. Supp. 2d 497, 514-15 (E.D. Va. 2012) (applying a statute of repose to bar the plaintiff's claims); *see also Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005) (permitting a statute of limitations argument as an affirmative defense). As a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure "tests the sufficiency of the complaint," that motion "generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred." *Goodman v. Praxair, Inc.* 494 F.3d 458, 464 (4th Cir. 2007). To properly raise such a defense in a motion to dismiss, the complaint must include allegations supporting this time bar. *Id.* In other words, a district court will reach a statute of repose or limitations defense if the "time bar is apparent on the face of the complaint." *Dean*, 395 F.3d at 474 (citing *Bethel v. Jendoco Construction Corp.*, 570 F.2d 1168 (3d Cir. 1978)).

## ANALYSIS

Honeywell moves to dismiss the subject Second Amended Complaint on two grounds. First, it argues that Maryland's twenty-year statute of repose, Md. Code Ann., Cts. & Jud. Proc. § 5-108(a), serves as an absolute bar to Plaintiffs' claims. Second, Honeywell

5

contends that, even if the statute of repose does not apply, each count fails to state a claim for which relief may be granted. As Plaintiffs' claims are time-barred under the statute of repose, this Court need not reach Defendant's alternative ground for dismissal.

Under Maryland's statute of repose,

> "no cause of action for damages accrues . . . when wrongful death, personal injury, or injury to real or personal property resulting from the defective and unsafe condition of an improvement to real property occurs more than 20 years after the date the entire improvement first becomes available for its intended use."

Md. Code Ann., Cts. & Jud. Proc. § 5-108(a). In other words, this "blanket prohibition" applies when "(1) the plaintiff's injuries . . . resulted from the alleged defective and unsafe condition of 'an improvement to real property; and (2) 20 years . . . have passed since the 'entire improvement first bec[ame] available for its intended use." *Rose v. Fox Pool Corp.*, 643 A.2d 906, 910 (Md. 1994) (quoting § 5-108(a)).

Honeywell argues that Plaintiffs' claims satisfy both conditions. First, Plaintiffs assert claims for personal injuries and wrongful death allegedly stemming from an improvement to real property—the Dundalk Marine Terminal expansion on land reclaimed through COPR fill. Second, Honeywell contends that more than twenty years have passed since that improvement became available for its intended use. In response, Plaintiffs do not dispute the latter point.[6] Rather, they argue that, as COPR contains hazardous, carcinogenic hexavalent

---

[6] Honeywell ceased using COPR as fill in 1976, and the DMT was available for its intended use shortly thereafter. Second Amend. Compl. ¶¶ 16-17; Consent Decree, at 2. In Maryland, damages occur "when the injury or damage was discovered." *Burns v. Bechtel Corp.*, 66 A.3d 1187, 1191 (Md. 2013) (quoting *Hilliard & Bartko Joint Venture v. Fedco Sys., Inc.*, 533 A.2d 961, 968 (Md. 1987)). If the Decedent's death is the point of discovery, then his death in 2012 occurred thirty-six years after the DMT became available for use. If his diagnosis of lung cancer is the point of discovery, then Plaintiffs' claims remain time-barred. Plaintiffs do not include the date of his diagnosis in the Second Amended Complaint. Yet, even if the Decedent was diagnosed

chromium, it does not constitute an "improvement in real property" within the purview of Maryland's statute of repose.

Although § 5-108 does not define "improvement," Maryland courts define this term as:

> [a] valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes. Generally has reference to buildings, but may also include any permanent structure or other development, such as a street, sidewalks, sewers, utilities, etc. . . .

*Rose*, 643 A.2d at 918 (quoting *Black's Law Dictionary*, at 757 (6th ed. 1990)); *accord Hickman v. Carven*, 784 A.2d 31, 35-36 (Md. 2001); *see also Allentown Plaza v. Suburban Propane*, 405 A.2d 326, 332 (Md. 1979) (internal citation omitted) (explaining that the common sense definition of the term "improvement" is "everything that permanently enhances the value of premises for general uses."). Under Maryland's principles of statutory construction, courts should apply the common sense, ordinary meaning of the term "improvement." *Pippin v. Potomac Elec. Power Co.*, 132 F. Supp. 2d 379, 390 (D. Md. 2001).

To construe "improvement" according to its common sense meaning, courts look to "the nature of the addition of betterment, its permanence and relationship to the land and its occupants, and its effect on value and use of the property . . ." *Rose*, 643 A.2d at 918; *accord Potomac Elec. Power Co.*, 132 F. Supp. 2d at 390 (quoting *Lewis v. Weldotron Corp.*, 61 F. Supp. 2d 435, 437 (D. Md. 1999)). Further, Maryland's statute of repose encompasses both the improvement as a whole *and* any crucial or integral components. *Hickman*, 784 A.2d at 37-38.

---

prior to 1996, the applicable statutes of limitations under Maryland law would bar Plaintiffs' claims. *See* Md. Code Ann., Cts. & Jud. Proc. §§ 5-101, 5-113. Regardless, Plaintiffs do not dispute that the twenty-year period of the statute of repose has expired.

When the project itself is an improvement to real property, those integral components also constitute improvements. *Id.* at 38; *see also Pippin v. Reilly Industries, Inc.*, 64 F. App'x 382, 386 (4th Cir. 20013) (emphasis in original) (holding that, to be an integral component, the "item [need not] be the *only* means of achieving a particular purpose . . .").

In this case, Plaintiffs' claims arise from the Decedent's alleged prolonged exposure to COPR (and hexavalent chromium) while working at the DMT. Honeywell used the COPR in question as fill to effectuate the expansion of the DMT.  With the COPR fill, former river and marshland was transformed into an active and thriving marine shipping terminal. This transformation increased the commercial value of the property. Applying Maryland's "common sense" approach, the expansion of the DMT clearly constitutes an "improvement to real property." Moreover, while other fill materials presumably exist, Maryland law does not demand that COPR be the *only* possible material. *See Reilly Industries*, 64 F. App'x at 386. The COPR fill was an integral component of the DMT expansion, as any expansion requires land on which to build. As an essential component, the COPR fill falls within the ambit of § 5-108(a).

Plaintiffs agree that Maryland courts employ a "common sense" approach to interpreting the term "improvement" under the § 5-108(a), but contend that this term categorically excludes a material, such as the COPR fill, that is toxic and produces hazardous side effects. The statute of repose, however, bars causes of actions related to *any* improvement in real property,[7] and not solely those improvements comprised of non-

---

[7] As will be discussed *infra*, the Maryland General Assembly amended § 5-108 in 1991 to exclude asbestos manufacturers and suppliers from the purview of the statute. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-108(d).

hazardous materials. The legislative history of § 5-108 confirms this broad scope. Prior to 1979, § 5-108 enjoyed a seemingly limitless scope. *Burns*, 66 A.3d at 1192. In that year, the Maryland General Assembly amended § 5-108 to include a subsection (b), which "created a more favorable ten-year statute of repose for architects and professional engineers *only*." *Id.* (citing 1979 Laws of Maryland, Ch. 698; *Rose*, 643 A.2d at 913-14).

Twelve years later, the General Assembly again amended the statute of repose to address the increase of civil actions filed by victims of asbestos and its related diseases. *Burns*, 66 A.3d at 1192-93. Under § 5-108(d), the statute of repose does *not* extend to "a cause of action against a manufacturer or supplier for damages for personal injury or death caused by . . . a product that contains asbestos," where the injury "results from exposure to asbestos dust or fibers which are shed or emitted prior to or in the course of the affixation, application, or installation of . . . the product that contains asbestos to an improvement to real property[.]" § 5-108(d)(2)(ii). This amendment makes no mention of hexavalent chromium-related injuries. The statutory exclusion of asbestos-related injuries from the statute of repose necessarily implies that the General Assembly intended the statute to protect "manufacturers of products other than those containing asbestos . . ." *Rose*, 643 A.2d at 917.

Plaintiffs' argument essentially asks this Court to expand the exception of § 5-108(d) from solely asbestos exposure to include exposure to hexavalent chromium. Yet, the General Assembly specifically did not address hexavalent chromium when it amended the statute of repose to exclude asbestos. After all, the "cardinal rule of statutory construction is to effectuate and carry out legislative intent." *Rose*, 643 A.2d at 909. As this Court has

explained, Maryland principles of statutory construction thus prohibit the "insert[ion] or delet[ion] [of] words to make a statute express an intention different from its clear meaning." *Harford Mut. Ins. Co. v. Potomac Elec. Power Co.*, Civ. A. No. RDB-02-2412, 2003 WL 23304961, at *5 (D. Md. Sept. 4, 2003) (quoting *Hines v. Potomac Elec. Co.*, 504 A.2d 632, 634 (Md. 1986)). Under the maxim *expressio unius est exclusion alterius*,[8] the legislature's inclusion of explicit exceptions implies that it intended to exclude other similar exceptions. *See, e.g.*, *Breslin v. Powell*, 26 A.3d 878, 891 (Md. 2011) (discussing the application of *expressio unius* in statutory construction). With respect to § 5-108, the General Assembly included two such exceptions—the first, architects and professional engineers, and the second, asbestos exposure—thereby indicating that it intended this statute to apply to all other such improvements in real property. Plaintiffs, however, ask this Court to override the General Assembly's clear intent by inserting an exception for hexavalent chromium.

In sum, Maryland's statute of repose, § 5-108(a), applies to bar Plaintiffs' claims in the subject action. Specifically, the COPR fill alleged to have produced the claimed injuries was an integral component of the expansion of the DMT, an improvement to real property. As the alleged injuries arose more than twenty years after the expanded DMT became available for use, Honeywell is entitled to the protection of § 5-108(a).

CONCLUSION

For the reasons stated above, Defendant Honeywell's Motion to Dismiss (ECF No. 11) is GRANTED WITH PREJUDICE. Plaintiffs' claims are time-barred under Maryland's

---

[8] Black's Law Dictionary (9th ed. 2009) defines *expressio unius* as "to express or include one thing implies the exclusion of the other, or of the alternative[.]"

statute of repose, Md. Code Ann., Cts. & Jud. Proc. § 5-108(a), thus this case is DISMISSED

WITH PREJUDICE.

A separate Order follows.

Dated: September 21, 2015                    _____/s/_____
                                            Richard D. Bennett
                                            United States District Judge